## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| NANCY LITTLE, individually and as personal representative of the estate of ROBERT L. RABE, <br><br>         Plaintiff, <br><br> v. <br><br> THE BUDD COMPANY, <br><br>         Defendant. | Case No. 16-4170-DDC-KGG |

## MEMORANDUM AND ORDER

Plaintiff Nancy Little brings this action individually and as the personal representative of the estate of her father, Robert L. Rabe, against defendant The Budd Company. Plaintiff alleges that her father was exposed to asbestos-containing pipe insulation while working as a Pipefitter for the Atchison Topeka & Santa Fe Railroad ("ATSF") from 1951 into the mid-to-late 1970s. She contends that this exposure caused her father to develop asbestos-related malignant mesothelioma, causing his death on December 28, 2012.

Defendant allegedly manufactured passenger rail cars and sold them to ATSF. Plaintiff contends that defendant placed asbestos and asbestos-containing products into its railcars, thereby exposing her father to asbestos during his employment with ATSF. Plaintiff asserts Kansas state law claims for negligence, strict product liability/design defect, and strict product liability/warning defect. Alternatively, plaintiff asserts a state law claim against defendant for negligence per se based on defendant's alleged violation of two federal statutes: (1) the Locomotive Inspection Act ("LIA"), and (2) the Federal Safety Appliance Act ("SAA").

Defendant has filed a Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c). Doc. 22. Defendant asks the court to dismiss plaintiff's state law claims because, it contends, Congress's enactment of the LIA and SAA preempt plaintiff from asserting state law claims based on alleged exposure to asbestos contained in train equipment. Defendant also seeks dismissal of the claim plaintiff pleads in the alternative—*i.e.*, the negligence per se claim based on alleged LIA and SAA violations. Defendant argues that these federal statutes confer no private right of action on plaintiff and apply only to "railroad carriers." Defendant also argues that plaintiff's Complaint never alleges that defendant violated a specific statutory standard. Thus, defendant contends, plaintiff's alternative claim fails to state a claim for relief against defendant.

After considering the parties' arguments, the court denies defendant's Motion for Judgment on the Pleadings. The court explains why below.

## I.    Procedural Background

On July 27, 2016, plaintiff Nancy Little, individually and as personal representative of the Estate of Robert L. Rabe, deceased, filed this action against defendant The Budd Company in the District Court of Shawnee County, Kansas. Doc. 1-1. On October 6, 2016, plaintiff filed a "First Amended Original Petition." Doc. 1-4. On November 2, 2016, defendant removed the action to our court, asserting diversity jurisdiction under 28 U.S.C. § 1332.

The court agrees that diversity jurisdiction exists here. Plaintiff alleges that she is a Kansas citizen. Doc. 1-4 ¶ 1. She also asserts that her father was a life-long resident of Topeka, Kansas. Doc. 31 at 7. Plaintiff thus is a citizen of Kansas for diversity jurisdiction purposes. *See* 28 U.S.C. § 1332(c)(2) ("[T]he legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent[.]"). Defendant is a Michigan

corporation with its principal place of business in Illinois.  Doc. 1 at 2.  Defendant thus is a citizen of Michigan and Illinois.  *See* 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business[.]").  Diversity of citizenship is present here.

The amount in controversy also exceeds the $75,000 jurisdictional requirement. Although plaintiff never asserts an amount in controversy in either of her state court pleadings, defendant has established that the amount in controversy is satisfied based on plaintiff's alleged injuries and requested relief.[1]  *See McPhail v. Deer & Co.*, 529 F.3d 947, 955 (10th Cir. 2008) ("A complaint that presents a combination of facts and theories of recovery that may support a claim in excess of $75,000 can support removal.").  Here, plaintiff alleges that defendant caused plaintiff's father "to suffer severe and permanent injury to his person, to wit; asbestos-related malignant mesothelioma resulting in his death . . . ."  Doc. 1-4 ¶ 3; *see also id.* ¶¶ 11, 13, 19, 21, 28, and 30.  Plaintiff seeks general and special damages "including but not limited to, damages for survival and wrongful death claims that Plaintiff sustained both in her individual capacity and as heir to [her father's] estate."  *Id.* ¶ 38.  And, plaintiff seeks punitive damages, costs, and "all other and further relief permitted by law."  *Id.* ¶ 38 and "Prayer for Relief."  Based on these allegations and demands for relief, the court finds that the $75,000 amount in controversy requirement is satisfied.  *See McPhail*, 529 F.3d at 957 (holding that defendant established the requisite amount in controversy because, even though plaintiff never pleaded a specific amount of damages, plaintiff's allegations of wrongful death and the nature of the damages sought supported a claim in excess of $75,000).

---

[1]      Plaintiff never disputes that defendant has satisfied its burden to establish that the amount in controversy exceeds $75,000.

Because the parties are diverse and the amount in controversy exceeds $75,000, the court has jurisdiction over this action under 28 U.S.C. § 1332.

## II.    Factual Background

The following facts are taken from plaintiff's "First Amended Original Petition" (Doc. 1-4),[2] accepted as true, and viewed in the light most favorable to her. *Ramirez v. Dep't of Corr.*, 222 F.3d 1238, 1240 (10th Cir. 2000) (explaining that, on a motion for judgment on the pleadings, the court must "accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff" (citation omitted)).

From 1951 until his retirement in 1979, Robert L. Rabe worked for the ATSF in Shawnee County, Kansas, as a Pipefitter and in other related capacities. As part of his job duties for ATSF, Mr. Rabe was required to work with and around asbestos-containing pipe insulation that defendant had incorporated into passenger railcars it manufactured and sold to ATSF. Mr. Rabe's exposure to asbestos caused him to sustain severe and permanent injury to his body and respiratory system. The asbestos exposure eventually caused Mr. Rabe to develop malignant mesothelioma, resulting in his death on December 29, 2012.

## III.    Legal Standard

A party may move for judgment on the pleadings under Fed. R. Civ. P. 12(c) after the pleadings are closed but early enough not to delay trial. Fed. R. Civ. P. 12(c). Courts evaluate a Rule 12(c) motion under the same standard that governs a Rule 12(b)(6) motion to dismiss. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 n.2 (10th Cir. 2002) (citing *Atl. Richfield Co. v. Farm Credit Bank*, 226 F.3d 1138, 1160 (10th Cir. 2000)).

---

[2]     Plaintiff's "First Amended Original Petition" is the last pleading plaintiff filed before defendant removed the case to federal court. Plaintiff never has amended her pleading in federal court. Thus, plaintiffs' "First Amended Original Petition" is the operative pleading that the court considers when deciding defendant's Motion for Judgment on the Pleadings. For simplicity, the rest of this Order refers to this pleading as plaintiff's Complaint.

The court will grant a motion for judgment on the pleadings only when the factual allegations in the Complaint fail to "state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), or when an issue of law is dispositive, *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1192 (10th Cir. 2009) ("The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." (citation omitted)).

When considering whether a plaintiff has stated a plausible claim, the court must assume that the factual allegations in the complaint are true. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). But, the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice'" to state a claim for relief. *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). Also, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted).

## IV.  Analysis

Defendant seeks dismissal of plaintiff's state law tort claims based on a preemption theory. Defendant argues that the LIA and SAA preempt all regulation of train equipment under state law, including common law tort claims. So, defendant contends, these federal statutes

preclude plaintiff's claims under Kansas law asserting negligence, strict product liability/design defect, and strict product liability/warning defect.

Defendant next argues that plaintiff's alternative state law claim—one asserting negligence per se based on defendant's alleged violation of the LIA and SAA—fails to state a claim for relief. The court addresses each of defendant's arguments, in turn, below.

## A. Does Federal Law Preempt Plaintiff's State Law Tort Claims?

Defendant asserts that the LIA and SAA preempt the entire field of state regulation over train equipment. Defendant thus contends that federal preemption bars plaintiff's state law tort claims because plaintiff bases these claims on her father's alleged exposure to asbestos in passenger railcars manufactured by defendant.

The Supremacy Clause of the United States Constitution confers on Congress the power to preempt state law. U.S. Const. Art. VI, cl. 2. The clause provides that federal law is "the supreme Law of the Land . . . any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." *Id.* "Pre-emption of state law thus occurs through the 'direct operation of the Supremacy Clause.'" *Kurns v. R.R. Friction Prods. Corp.*, 565 U.S. 625, 630 (2012) (quoting *Brown v. Hotel Emps.*, 468 U.S. 491, 501 (1984)). The Supreme Court has explained that "Congress may, of course, expressly pre-empt state law, but '[e]ven without an express provision for preemption, we have found that state law must yield to a congressional Act in at least two circumstances.'" *Id.* (quoting *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000)). "First, 'state law is naturally preempted to the extent of any conflict with a federal statute.'" *Id.* (quoting *Crosby*, 530 U.S. at 372). Second, state law is pre-empted "'when the scope of a [federal] statute indicates that Congress intended federal law to occupy a field exclusively.'" *Id.* at 630–31 (quoting *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995)).

The court's analysis here deals with the second type of preemption—field preemption. Defendant argues that Congress intended to occupy the entire field of train equipment regulation when it enacted the LIA and SAA. The court disagrees. Neither of these two acts broadly preempts the entire field of train equipment regulation. The court explains its reasoning below, beginning with a description of the two federal acts' history and then turning to discuss each of the two statutes separately.

### 1.    The History of the SAA and LIA

The Third Circuit recently summarized the history of these two federal statutes. *In re Asbestos Prods. Liability Litig. (No. VI)*, 822 F.3d 125, 128–29 (3d Cir. 2016). In this case, the Third Circuit explained:

> Toward the end of the nineteenth century, the rapid growth of the railroad industry in the United States brought with it numerous accidents and deaths. *See*, *e.g.*, Charles W. McDonald, Federal Railroad Administration, The Federal Railroad Safety Program 2–6 (Aug. 1993). In response to these safety concerns and because of the variety of state laws regulating the industry, Congress in 1893 passed the Safety Appliance Act (SAA). Act of Mar. 2, 1893, ch. 196, 27 Stat. 531–32, *amended by* Act of Mar. 2, 1903, ch. 976, 32 Stat. 943, *and* Act of Apr. 14, 1910, ch. 160, 36 Stat. 298; *see also* Lorenzo S. Coffin, Safety Appliances on the Railroads, 5 Annals of Iowa 561, 569–80 (1903). Full implementation of the SAA, which required railroads to equip trains with automatic couplers and power brakes, was delayed until 1900. *See* Note, The Federal Safety Appliance Act as a Regulation of Interstate Commerce, 3 Mich. L. Rev. 387, 388 (1905).

*Id.* at 128.

> The LIA's enactment came next:

> Eleven years [after the SAA], Congress began regulating locomotive steam boilers through the Boiler Inspection Act (BIA). Act of Feb. 17, 1911, ch. 103, § 2, 36 Stat. 913–14. Soon thereafter, the BIA was amended to cover the entire locomotive as well as its "parts and appurtenances." Act of Mar. 4, 1915, ch. 169, 38 Stat. 1192. The statute as amended has since been known as the Locomotive Boiler Inspection Act, or simply the Locomotive Inspection Act (LIA).

*Id.* (footnote omitted).

The Third Circuit then explained how this "increased federal regulation of the locomotive industry resulted in conflicts with various state laws." *Id.* at 129. This conflict eventually presented constitutional challenges to specific state laws and required the Supreme Court to decide whether "Congress intended 'to occupy the entire field of regulating locomotive equipment.'" *Id.* (quoting *Napier v. Atl. Coast Line R.R. Co.*, 272 U.S. 605, 611 (1926)). The Third Circuit described the Supreme Court's holding in *Napier* in this fashion:

> The Court noted that the SAA, which included specific requirements, and the BIA, which regulated only boilers, did not preempt the field. [*Napier*, 272 U.S. at 611.] As amended in 1915, however, the LIA included a "general" power that "extend[ed] to the design, the construction, and the material of every part of the locomotive and tender and of all appurtenances." 272 U.S. at 611, 47 S. Ct. 207. The "broad scope" of this "general" authority led the Court to conclude that Congress, in enacting the LIA, had "occupied the field of regulating locomotive equipment." *Id.* at 607, 613, 47 S. Ct. 207. For that reason, "[b]ecause the standard set by the [Interstate Commerce] Commission must prevail, requirements by the states are precluded, however commendable or different their purpose." *Id.* at 613, 47 S. Ct. 207.

*Id.* (footnote omitted).

More recently, "the Supreme Court revisited the LIA's preemptive scope in *Kurns v. Railroad Friction Products Corp.*, [565 U.S. 625] (2012)." *Id.* The Third Circuit described *Kurns* in this fashion:

> Unlike *Napier*—which involved the preemption of state statutes—*Kurns* considered whether the LIA preempted state causes of action. The plaintiffs in *Kurns* asserted state law defective-design and failure-to-warn claims against the manufacturers of locomotive brake shoes and locomotive engine valves that contained asbestos. [565 U.S. at 630.] Underscoring that "*Napier* defined the field pre-empted by the LIA on the basis of the physical elements regulated," the Court held that the state law claims were preempted because they were "directed at the equipment of locomotives." [565 U.S. at 636] (emphasis added); *see also id.* at [638] (Kagan, J., concurring) ("According to *Napier*, the scope of the agency's power under the [LIA] determines the boundaries of the preempted field.").

*Id.*

Thus, in *Kurns*, the Supreme Court "rejected the distinction between common law claims and positive law enacted through state legislation or regulation, holding that *Napier*'s 'categorical conclusion admits of no exception for state common-law duties and standards of care . . . [because] state regulation can be . . . effectively exerted through an award of damages.'" *Id.* (quoting *Kurns*, 565 U.S. at 637 (further citation and internal quotation marks omitted)). "And by holding the plaintiffs' failure-to-warn claims preempted, the Court also precluded the attachment of state law duties or conditions to locomotive equipment because such legal requirements would "'inevitably influence a manufacturer's choice whether to use that particular design.'" *Id.* (quoting *Kurns*, 565 U.S. at 635 n.4).

With this summary of the law governing field preemption, the court turns to consider whether the LIA and SAA preempt the state law tort claims plaintiff asserts in this action.

### 2.  The LIA

Plaintiff asserts that the LIA does not preempt her state law tort claims because the federal statute only prohibits state regulation over the "design, the construction, and the material of every part of the locomotive and tender and of all appurtenances." *Napier*, 272 U.S. at 611; *see also Kurns*, 565 U.S. at 631 (quoting *Napier*, 272 U.S. at 611).  In contrast, plaintiff contends, the LIA does not preempt claims, like the ones here, involving non-motorized passenger railcars.

The LIA provides:

> A railroad carrier may use or allow to be used *a locomotive or tender* on its railroad line only when *the locomotive or tender and its parts and appurtenances*—
>
>> (1) are in proper condition and safe to operate without unnecessary danger of personal injury;

>   (2) have been inspected as required under this chapter and regulations
>   prescribed by the Secretary of Transportation under this chapter; and
>
>   (3) can withstand every test prescribed by the Secretary under this chapter.

49 U.S.C. § 20701 (emphasis added).

Like the issue presented here, the Third Circuit analyzed whether the LIA preempted a plaintiff's state law tort claims against railcar manufacturers arising from exposure to asbestos-insulated steam pipes on passenger rail cars in *In re Asbestos Products Liability Litigation (No. VI)*. The Third Circuit observed that "*Napier* and *Kurns* establish that field preemption under the LIA turns on one fundamental question: is the state regulation or cause of action 'directed at the equipment of locomotives'?" 822 F.3d at 131 (quoting *Kurns*, 565 U.S. at 635). "If it is, the regulation or cause of action is preempted because it falls within the regulatory space assigned by the statute to the Federal Railroad Administration." *Id.* at 131–32.

The Third Circuit recognized that neither *Napier* nor *Kurns* required the court to decide whether the regulation or cause of action was directed at equipment of locomotives "because the answer was obvious in both cases." *Id.* at 132 (explaining that *Napier* involved state statutes "requiring railroads to install cab curtains and automatic doors in locomotives" and *Kurns* involved state standards of care governing "locomotive brake shoes and engine valves"). Thus, neither *Napier* nor *Kurns* "had to confront the distinction between locomotive equipment and equipment belonging to some other railroad apparatus" like in the Third Circuit's case which involved "passenger railcars." *Id.* The Third Circuit also did not know "of any other federal court of appeals' decision that has had to squarely confront this distinction." *Id.*

The Third Circuit recognized that "[i]n the absence of clear guidance on the issue" the district court had relied on *Southern Railway Co. v. Lunsford*, 297 U.S. 398 (1936). Although not a preemption case, *Lunsford* construed the term "parts and appurtenances" under the LIA to

include "[w]hatever in fact is an integral and essential part of a completed locomotive, and all parts or attachments definitely prescribed by lawful order of the [Federal Railroad Administration]."  297 U.S. at 402.  The Third Circuit expressed no opinion whether *Lunsford* appropriately defines the scope of field preemption under the LIA.  822 F.3d at 132 n.5.  But, it held, the district court had erred by granting defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(6) because it concluded that the asbestos-insulated steam pipes on passenger rail cars "were joined to create a system of pipes that connect the railcars and locomotives, and that this system was an essential and integral part of the completed locomotive under *Lunsford*."  *Id.* at 132.  The Circuit found that the district court's conclusion "cannot be squared with [plaintiff's] amended complaint" because the pleading was "devoid . . . of any facts establishing a 'system of pipes' connecting the railcars to the locomotive."  *Id.* at 133.  Indeed, "the word 'locomotive' never even appear[ed] in [plaintiff's] amended complaint."  *Id.*  The Circuit thus concluded that the district court had erred by relying on evidence extrinsic to the pleadings to decide a motion to dismiss under Rule 12(b)(6).  *Id.*

The Circuit also concluded that the current record precluded the district court from granting summary judgment against plaintiff's claims under Rule 56.  *Id.* at 135–36.  But, it took "no position" whether "summary judgment might be warranted on a different record after further discovery."  *Id.* at 136 n.11.  The Third Circuit thus vacated the district court's dismissal and remanded the case for further proceedings.  *Id.* at 136.[3]

---

[3]    The case remains pending in the Eastern District of Pennsylvania.  *See Hassell v. The Budd Co.*, No. 2:09-cv-90863-ER (E.D. Pa.).  The parties represent that they have briefed some of the same issues pending here in summary judgment motions filed in the *Hassell* case.  To date, the Eastern District of Pennsylvania has not ruled the pending summary judgment motions in *Hassell*.  *See* Motions for Summary Judgment, *Hassell v. The Budd Co.*, No. 2:09-cv-90863-ER (E.D. Pa. Jan. 20, 2017), ECF Nos. 110, 111.

Likewise, the court must determine here whether plaintiff's Complaint states viable state law tort claims based on the decedent's alleged exposure to asbestos-containing pipes found in passenger rail cars or, instead, whether the LIA preempts such claims.  Because the LIA only preempts state regulation over the "design, the construction, and the material of every part of the locomotive and tender and of all appurtenances," *Napier*, 272 U.S. at 611; *see also Kurns*, 565 U.S. at 631, the court frames the question the same way the Third Circuit did:  Are plaintiff's state law causes of action "'directed at the equipment of locomotives?'", *In re Asbestos Prods. Liability Litig. (No. VI)*, 822 F.3d at 131 (quoting *Kurns*, 565 U.S. at 635).

Here, plaintiff contends that the passenger cars that Mr. Rabe worked on were not locomotives, and thus, the LIA's regulation of locomotives does not preempt plaintiff's claims.  The LIA's regulations define a locomotive as "a piece of on-track equipment . . . (1) With one or more propelling motors designed for moving other equipment; (2) With one or more propelling motors designed to carry freight or passenger traffic or both; or (3) Without propelling motors but with one or more control stands."  49 C.F.R. § 229.5.  Plaintiff's Complaint does not contain sufficient allegations for the court to conclude, as a matter of law, that plaintiff's state law claims—ones involving passenger rail cars manufactured and sold by defendant—are directed at the equipment of locomotives.  Indeed, plaintiff's Complaint describes defendant's railcars as "conventional, non-motorized rail cars and coaches, for the carriage of passengers."  Doc. 1-4 ¶ 5.  And it includes no other allegations that would allow a factfinder to infer that the passenger cars relied on by plaintiff's cause of action are "locomotives" as the LIA's regulation defines that term.

Also, assuming that *Lunsford* applies, the court cannot square *Lunsford*'s definition of locomotive "parts and appurtenances" with the Complaint's allegations.  As explained above,

*Lunsford* defined a locomotive's "parts and appurtenances" to include "[w]hatever in fact is an integral and essential part of a completed locomotive, and all parts or attachments definitely prescribed by lawful order of the [Federal Railroad Administration]." 297 U.S. at 402. Here, plaintiff's Complaint never alleges facts capable of supporting an inference that pipe insulation in passenger rail cars is an "integral and essential part of a completed locomotive." Also, the regulations promulgated by the Federal Railroad Administration governing a locomotive's parts and attachments never address pipe insulation in passenger railcars. *See* 229 C.F.R. § 229.1, *et seq.*

The court recognizes that the summary judgment facts, when established, could call for a different analysis. But on the record here—viewing the Complaint's allegations in the light most favorable to plaintiff—the court cannot conclude, as a matter of law, that plaintiff's claims are directed at the equipment of locomotives. The court thus declines to grant judgment on the pleadings on the theory that the LIA preempts plaintiff's state law tort claims.

### 3.  The SAA

The SAA requires railroad carriers to use railcars that are equipped with certain "safety appliances." 49 U.S.C. § 20301, *et seq.* Such safety equipment includes, for example, automatic couplers, secure sill steps and hand brakes, grab irons and handholds, and drawbars at specified heights. 49 U.S.C. § 20302; *see also Jordan v. S. Ry. Co.*, 970 F.2d 1350, 1352 (4th Cir. 1992) (recognizing, in an action brought under the Federal Employers' Liability Act ("FELA"), that that the SAA "contains a strikingly specific laundry list of equipment a railroad must have on each type of car:  ladders, brakes, automatic couplers, hand holds, running boards, etc.").

Plaintiff argues that the SAA does not preempt her state law claims because that federal statute applies to a specific list of "safety appliances" but it does not reach pipe insulation

installed in passenger rail cars—the equipment at issue in this case.  In contrast, defendant argues that the SAA preempts the entire field of railway equipment—including pipe insulation in passenger railcars—thus preempting plaintiff's claims.

In 1914, the Supreme Court considered the SAA's preemptive effect in *Atlantic Coast Line Railroad Co. v. Georgia*, 234 U.S. 280 (1914).  In that case, the Supreme Court held that neither the original LIA nor the SAA preempted a Georgia statute requiring the use of headlights on locomotives.  *Id.* at 287, 293–94.  The Court recognized "Congress [had] acted" by enacting federal statutes governing certain locomotive equipment and providing for the investigation and report "on the need of any appliances or systems intended to promote the safety of railway operations."  *Id.* at 293.  But, according to the Supreme Court, "it [did] not appear . . . either that Congress [had] acted, or that the Commission, under the authority of Congress, [had] established any regulation so far as headlights are concerned."  *Id.* at 293.  So, because "the situation [had] not been altered by any exertion of Federal power," the SAA did not preempt the Georgia statute. *Id.* at 293–94.

Defendant contends that *Atlantic Coast Line* does not apply here because that case involved the SAA's preemptive effect over *locomotive* equipment and not *railway* equipment— the equipment at issue here.  Defendant argues, instead, that the Supreme Court reached that question a year later in *Southern Railway Co. v. Railroad Commission of Indiana*, 236 U.S. 439 (1915).  This case involved an Indiana statute requiring railway companies "to place secure grab irons and hand holds on the sides or ends of every railroad car."  *Id.* at 444.  The Court held that the SAA preempted the Indiana statute because the federal legislation "extended to the whole subject of equipping cars with appliances intended for the protection of employees."  *Id.* at 446.  So, after Congress passed the SAA, states "could not legislate so as to require greater or less or

14

different equipment; nor could they punish by imposing greater or less or different penalties." *Id.*

Defendant argues that with this holding, the Supreme Court broadly preempted the field of railway equipment. But the court does not read the Supreme Court's holding so expansively. The Court held that the SAA preempted "the subject of equipping cars with appliances *intended for the protection of employees*." *Id.* at 446 (emphasis added). Later in the *Southern Railway* opinion, the Court expressed its conclusion another way: "[I]t is sufficient here to say that Congress has so far occupied the field of legislation relating to the equipment of freight cars with *safety appliances* as to supersede existing and prevent further legislation on that subject. The principle is too well established to require argument." *Id.* at 447 (emphasis added).

Here, the court cannot conclude from the facts alleged in plaintiff's Complaint that pipe insulation in passenger railcars is, as a matter of law, an "appliance intended for the protection of employees" or a "safety appliance" that falls under the SAA, and thus preempts plaintiff's state law claims. Indeed, if the Supreme Court had intended a result as broad as the one defendant advocates here, *Southern Railway* could have expressly held that the SAA preempted the entire field of railway equipment. But it doesn't. Instead, the opinion limits the preemptive effect of the SAA to "safety appliances." *Id.* at 447.

Notably, our court previously has refused to hold that the SAA preempts the entire field of railway equipment. In *Garay v. Missouri Pacific Railroad Co.*, the decedent's heirs brought a products liability action against a railroad car manufacturer and the railroad company who owned the car after the decedent was killed unloading beans from a hopper car. 38 F. Supp. 2d 892, 896–97 (D. Kan. 1999). Defendants moved for summary judgment against plaintiffs' claims, asserting that the SAA preempted them. *Id.* at 897. Judge Brown disagreed. He first

recognized that cases applying SAA preemption "involved state regulations of safety equipment actually mentioned in federal regulations." *Id.* at 898. But, "[i]n other cases, the Supreme Court has suggested that the preemptive effect of the [SAA] extends only to the types of equipment listed in the statute." *Id.* For example, "[i]n *Atlantic Coast Line Railroad Co. v. State of Georgia*, 234 U.S. 280 (1914), the Supreme Court held that a Georgia statute requiring headlights on locomotives was not preempted by the [SAA] because the act did not 'provide regulations for locomotive headlights.'" *Id.* (quoting *Atl. Coast Line*, 234 U.S. at 293; then citing *Napier v. Atlantic Coast Line R. Co.*, 272 U.S. 605, 611 (1926) ("Does the legislation of Congress manifest the intention to occupy the entire field of regulating locomotive equipment? Obviously it did not do so by the Safety Appliance Act, since its requirements are specific.")).

Judge Brown also noted that "[t]he [SAA] and its regulations do not provide a definition of 'safety appliance,' but rather contain 'a strikingly specific laundry list' of required equipment for each type of rail car." *Id.* (quoting *Jordan v. Southern Ry. Co.*, 970 F.2d 1350, 1352 (4th Cir. 1992)). And, "[a]lthough the Act applies to these specific types of equipment, '[n]o other device, however necessary for safety, falls within its reach.'" *Id.* (quoting *Jordan*, 970 F.2d at 1353). Judge Brown thus concluded "that the [SAA] does not subsume the entire field of devices which could be deemed safety equipment, but only the subject of those devices which are listed in the statute." *Id.* And, because the SAA did not include the devices at issue in *Garay*, Judge Brown held that the SAA did not preempt plaintiff's products liability claims. *Id.*

Defendant contends that Judge Brown was wrong and thus *Garay* provides no persuasive authority. Defendant criticizes *Garay* because it relied on *Jordan*—a FELA case—to define the scope of SAA preemption and never cited *Southern Railway*, thus "miss[ing] the on-point, controlling decision." Doc. 34 at 12. While defendant's bare proposition is right—*Garay* is not

controlling precedent—the court rejects defendant's argument that Judge Brown was wrong. Although *Garay* never cited *Southern Railway*, its holding does not change *Garay*'s result. As already explained, *Southern Railway* held that the SAA "occupied the field of legislation relating to the equipment of freight cars with *safety appliances* as to supersede existing and prevent further legislation on that subject." 236 U.S. 447 (emphasis added). This holding is perfectly consistent with Judge Brown's conclusion that the SAA did not preempt the *Garay* plaintiff's claims because none of the equipment at issue there was a "safety appliance" under the SAA. *Garay*, 38 F. Supp. 2d at 897.

Likewise, here, the court cannot conclude that the facts alleged in plaintiff's Complaint establish, as a matter of law, that the pipe insulation found in defendant's passenger railcars is a "safety appliance" under the SAA. The court thus declines to grant judgment on the pleadings on the theory that the SAA preempts plaintiff's state law claims.

### 4. No Preemption Based the Two Federal Statutes "Jointly"

Defendant also asserts that the LIA and SAA "jointly preempt" state regulation of train equipment, including common-law tort actions. Doc. 23 at 12. Defendant argues that "[t]ogether, [the LIA and SAA] preempt the field of State regulation over locomotives and railcars" thus preempting "the field of State regulation over train equipment." *Id.* at 15. This argument theorizes that adding the two acts together achieves a result that neither act, by itself, can achieve. Defendant cites no case law that has reached such a sweeping conclusion. Indeed, the Third Circuit recently declined a dissenting judge's invitation to "take the next logical step on the path *Kurns* has laid out" and "hold that the LIA preempts all state law claims in the field of railroad safety." *Del. & Hudson Ry. Co., Inc. v. Knoedler Mfrs., Inc.*, 781 F.3d 656, 669 (3d Cir. 2015) (Hardiman, J., dissenting). Instead, the majority held that it was "faithfully applying

17

the holding of *Kurns*, instead of unnecessarily and, in our view, unwisely expanding its language to cover the situation at issue here, as the dissent would do." *Id.* at 664 n.12; *see also id.* at 661– 68 (holding that the LIA did not preempt a railroad's indemnification, contribution, and breach of contract claims against an equipment supplier and maintenance service provider based on defective train seats).

Nevertheless, defendant argues that the court should combine the Supreme Court cases governing preemption under the LIA and SAA to conclude that the current law requires preemption of the entire field of train equipment regulation. *See* Doc. 23 at 13 (arguing that "[r]eading the *Napier* and *Southern Railway* lines of cases together with *Kurns*, Congress has placed train equipment beyond the reach of State regulation of any kind, even the common-law tort system."). The existing case law does not support this result.

As discussed above, the court finds that neither the LIA nor SAA, separately, preempts the entire field of state regulation over train equipment. True, the case law holds that the LIA preempts the field of state regulation of locomotives. And the SAA preempts the field of state regulation of safety appliances for railcars. But, none of the case law supports defendant's sweeping proposition that these "two statutes operate in tandem to preempt State regulation of [all] train equipment." Doc. 34 at 18. The court thus rejects defendant's preemption argument.

### B. Does Plaintiff's Alternative Claim Asserting Negligence Per Se Based on Defendant's Alleged Violation of Two Federal Statutes State a Claim for Relief?

Alternatively, plaintiff asserts a negligence per se claim under Kansas law, alleging that defendant violated the standards promulgated by the LIA and SAA. Plaintiff's Complaint specifically denies that these two federal statutes preempt her state law claims. Doc. 1-4 ¶ 31. But, if the court determines that either or both of these two federal statutes preempt her claims,

plaintiff seeks to assert an alternative state law cause of action based on defendant's alleged

violation of the LIA and SAA.  *Id.*  Plaintiff also explains in her Opposition to defendant's

motion that if "the Court finds no preemption of Plaintiff's first three common law causes of

action, then her alternative fourth cause of action for statutory violation becomes moot."  Doc. 31

at 33.  This is so "because . . . no relevant federal standard of care under [the] LIA [or] SAA

[would exist] to violate."  *Id.*

      The Federal Rules specifically allow litigants to plead alternative theories of recovery.

*See* Fed. R. Civ. P. 8(a)(3) (authorizing a party to plead "relief in the alternative or different

types of relief").  The Rules also contemplate inconsistent and even hypothetical statements of a

party's claim or defense.  *See also* Fed. R. Civ. P. 8(d)(2) (allowing a party to "set out 2 or more

statements of a claim or defense alternatively or hypothetically, either in a single count or

defense or in separate ones.  If a party makes alternative statements, the pleading is sufficient if

any one of them is sufficient."); *see also* Fed. R. Civ. P. 8(d)(3) ("A party may state as many

separate claims or defenses as it has, regardless of consistency.  If a party makes alternative

statements, the pleading is sufficient if any one of them is sufficient.").

      Our Circuit has held that a plaintiff may use evidence of an SAA violation to support a

common law negligence claim.  *See Miller v. Union Pac. R.R. Co.*, 900 F.2d 223, 224–25 (10th

Cir. 1990) (affirming trial court's decision to allow jury to consider defendant's violation of the

SAA as evidence supporting a common law negligence claim); *see also Armstrong v. Kansas

City S. Ry. Co.*, No. 91-2465-V, 1992 WL 105063, at *2 (D. Kan. Apr. 22, 1992) (holding that "a

cause of action for common law negligence alleging a violation of the Safety Appliance Act—a

negligence per se claim" stated a viable claim for relief).  And, although the court has found no

Tenth Circuit authority on this point for the LIA, other courts have concluded that a plaintiff may

assert state law claims premised on violations of the LIA.  *See*, *e.g.*, *Del. & Hudson Ry. Co. v. Knoedler Mfrs., Inc.*, 781 F.3d 656, 662 (3d Cir. 2015), *cert. denied* 136 S. Ct. 54 (2015) (holding that the LIA does not preempt a state claim "that is premised on a violation of the duties and standards of care stemming from the LIA itself"); *BNSF Ry. Co. v. Seats, Inc.*, 349 P.3d 1096, 1099–1100 (Ariz. Ct. App. 2015) (holding that the LIA did not preempt a railroad's state-law claims alleging that a locomotive seat manufacturer failed to comply with the federal standard of care established in LIA); *Engvall v. Soo Line R.R. Co.*, 632 N.W.2d 560, 570–71 (Minn. 2001) (holding that "the field preempted by the LIA does not include state common law actions based on a violation of the LIA" because when applying the federal standard of care in the LIA "there is no danger of undermining the goal of nationwide uniformity of railroad operating standards, the primary rationale for holding state law claims preempted.").  The court finds these cases persuasive.

Defendant asserts three reasons why, it contends, plaintiff cannot assert her alternative cause of action.[4]  First, defendant argues that neither the LIA nor the SAA creates a private right of action.  This argument misunderstands plaintiff's claim.  Plaintiff is not asserting a direct claim against defendant for allegedly violating these federal statutes.  Instead, plaintiff asserts a state law tort claim, alleging negligence per se, based on defendant's alleged violation of the LIA and SAA.  These claims are cognizable for reasons already explained.

---

[4]    Defendant asserts these arguments in its Memorandum Supporting its Motion for Judgment on the Pleadings.  Doc. 23.  But defendant's Reply never responds to plaintiff's arguments that she has stated a viable claim based on an alternative theory of relief.  Arguably, defendant's failure to address these arguments amounts to a waiver of this issue.  *See In re FCC 11-161*, 753 F.3d 1015, 1100–01 (10th Cir. 2014) (rejecting petitioners' argument because their reply brief was silent on an issue and made no attempt to rebut the respondents' argument); *see also Cayetano-Castillo v. Lynch*, 630 F. App'x 788, 794 (10th Cir. 2015) (holding that an appellant, who does not respond to an argument in its reply brief, "'waives, as a practical matter anyway, any objections not obvious to the court to specific points urged by the appellee'" because the court is not "required to do his work for him and dissect [the appellee's] plausible argument" (quoting *Hardy v. City Optical, Inc.*, 39 F.3d 765, 771 (7th Cir. 1994)).  Nevertheless, the court addresses them above.

Second, defendant argues that plaintiff cannot state a claim based on LIA or SAA violations because those statutes apply only to "railroad carriers" and not to a supplier or manufacturer of passenger railcars like defendant.  *See* 49 U.S.C. § 20701 (LIA); 49 U.S.C. § 20302(a) (SAA).  But, plaintiff argues, the LIA and SAA share a common penalty provision that allows the imposition of fines up to $100,000 on any "person" who violates the acts.  49 U.S.C. § 21301(a).  And, the governing regulations provide that the statute's use of "person" includes "any . . . manufacturer" of railroad equipment who is subject to penalties for violating the acts. 49 C.F.R. § 229.7 (LIA); 49 C.F.R. § 231.0(f) (SAA).

Third, defendant contends that plaintiff's exclusive remedy is found in FELA.  But that statute imposes liability on the decedent's employer.  45 U.S.C. § 51 (imposing liability on "[e]very common carrier by railroad" for injuries to "any person . . . employed by such carrier" caused by negligence).  Here, the decedent's employer was ATSF, not defendant.  And, as plaintiff explains, litigants commonly add or implead non-employer third parties to FELA actions to assert state law claims against them.  *See*, *e.g.*, *Vanskike v. ACF Indus., Inc.*, 665 F.2d 188, 194 (8th Cir. 1981) (affirming the trial court's liability findings against the manufacturer and the owner of a trailer hitch based on a strict liability theory and against an employer based on a FELA claim arising from an accident that occurred when plaintiff was unloading a semi-trailer secured to a railroad flatcar by the trailer hitch); *Rucker v. Norfolk & W. Ry. Co.*, 396 N.E.2d 534, 535 (Ill. 1979) (explaining that the case—one arising from a tank car explosion that killed an employee—involved strict liability claims against the manufacturer and the lessor of a petroleum gas tank car and a FELA claim against the employer).

Finally, defendant contends that plaintiff's Complaint fails to allege that defendant violated a specific statutory standard.  Plaintiff's alternative claim alleges that defendant violated

21

the standard of care promulgated by the LIA and SAA. As explained above, other courts have determined that these statutes may provide a standard of care to support a common law negligence claim. The court thus concludes that plaintiff's alternative claim states a claim for relief sufficient to survive defendant's Motion for Judgment on the Pleadings.

In sum, the court concludes that none of defendant's arguments preclude plaintiff's alternative claim for relief. The court thus denies defendant's Motion for Judgment on the Pleadings against this alternative claim.

## V.    Conclusion

For reasons explained above, the court denies defendant's Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motion for Judgment on the Pleadings (Doc. 22) is denied

**IT IS SO ORDERED.**

**Dated this 12th day of January, 2018, at Topeka, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**