# In the United States District Court
# For the District of Kansas

| | |
|---|---|
| NANCY LITTLE, and<br>ESTATE OF ROBERT L. RABE,<br><br>        Plaintiffs,<br><br>v.<br><br>THE BUDD COMPANY, INC.,<br><br>        Defendant. | Civil No. 5:16-04170<br>HON. DANIEL D. CRABTREE<br>MAG. KENNETH G. GALE<br><br>**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO EXCLUDE THE TESTIMONY OF DR. ARNOLD BRODY** |

– 2 –

## NATURE OF MATTER BEFORE THE COURT

Defendant The Budd Company, Inc. respectfully files this memorandum in support of its Motion to Exclude the Testimony of Arnold Brody, Ph.D. from trial in this lawsuit under: (1) F.R.E. 702, because his opinions and testimony are not helpful to a jury, and do not meet the standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993) and (2) under F.R.E. 403, because it has no probative value and there is a high risk of confusing and misleading the jury.

## STATEMENT OF FACTS

Dr. Brody is not a medical doctor, but rather a molecular biologist who has experimented upon rats. The rats were forced to inhale enormous concentrations of asbestos dust, then killed. Dr. Brody subsequently examined the rats' lungs under an electron microscope and, by means of powerful magnification, observed sub-cellular changes within forty-eight hours after the rats' enormous dose of asbestos. He contends, with no support from human experimentation, that these sub-cellular changes are the earliest signs of asbestos-related disease. Based on his observation of rats, Dr. Brody leaps to the conclusion that asbestos-related disease in humans begins immediately after inhalation of asbestos dust.

In addition, Dr. Brody's report — and his prior testimony in similar cases — suggests that he may attempt to offer improper causation opinions based on the "every exposure" theory. Dr. Brody's approach is to rule out background

exposures as a cause of asbestos-related disease, but concludes that every other exposure is necessarily a cause of disease: "no amount of exposure to asbestos above the background levels present in ambient air has been established as too low to induce mesothelioma." *See* Dr. Brody Report at ¶45, attached as Exhibit A.  Dr. Brody opines that each of Decedent's exposures to asbestos—in any form, processed or otherwise—was a cause of Decedent's disease based on the "every exposure" or "cumulative exposure" theory. *See* Ex. A at ¶44.

Dr. Brody's testimony is speculative, irrelevant, immaterial, cumulative, unduly prejudicial and requires an undue consumption of time.  His causation opinions fail to meet the reliability standards of Federal Rule of Evidence 702 and *Daubert*, and are irrelevant, unhelpful, prejudicial, and misleading to the jury for the following reasons.  His theory that "each and every exposure" to asbestos contributed to decedent Robert Rabe's mesothelioma are entirely irrelevant and unhelpful under the "substantial factor" test.

## QUESTION PRESENTED

Should the Court exclude the testimony of Plaintiff's expert witness Arnold Brody, Ph.D.?

## ARGUMENT AND AUTHORITIES

### I.   The Court Must Determine Whether an Expert's Methodology Meets FRE 702.

Under Federal Rule of Evidence 702, expert opinion evidence is admissible only if (a) the expert's scientific, technical, and other specialized knowledge will assist the trier of fact in understanding the evidence or to

– 3 –

determine a fact in issue, (b) the expert witness is qualified as an expert by knowledge, skill, experience, training or education to provide the opinion, and (c) the following three requirements are met:

      (1) The testimony is based upon sufficient facts or data;

      (2) The testimony is the product of reliable principles and methods; and

      (3) The expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Because expert testimony is almost invariably cloaked with an aura of reliability, Rule 702 requires the Court to perform a gatekeeper's function of screening such evidence for both reliability and relevance. *See Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-95 (1993). To fulfill its gatekeeping role, the Court must conduct a two-part inquiry. The Court must determine if (1) the expert's proffered testimony "has 'a reliable basis in the knowledge and experience of his [or her] discipline'" and (2) whether proposed testimony is sufficiently 'relevant to the task at hand' and that the expert's opinion is material and will assist the trier of fact." *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232-33, 1234 (10th Cir. 2004).

    Indeed, "[u]nder the regime of *Daubert* a . . . judge asked to admit scientific evidence must determine whether the evidence is genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist." *Allison v. McGhan Med Corp.*, 184 F.3d 1300, 1316-17 (11th Cir. 1999). In considering the admissibility of expert testimony under Rule 702, "the court must recognize that due to the difficulty of evaluating their testimony, expert

witnesses have the potential to 'be both powerful and quite misleading.'" *Daubert*, 509 U.S. at 595. Thus, "given the potential persuasiveness of expert testimony, proffered evidence that has a greater potential to mislead than to enlighten should be excluded." *Id.*

In assessing whether the proffering party has made the necessary showing of scientific reliability, a trial court should consider the following non-exclusive factors set forth in *Daubert:*

> (1) Whether the theory or technique can be tested;
> (2) Whether it has been subjected to peer review and publication; and
> (3) The known or potential rate of error for the theory or technique, and
> (4) The general degree of acceptance in the relevant scientific or professional community.

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  The proponent of expert testimony bears the burden of proving the testimony's reliability under this standard by a preponderance of the evidence. Cooper, 259 F.3d at 199.

While the district court has discretion in determining how to fulfill this obligation, the most common method for developing a fully developed record is through a *Daubert* hearing. *See Goebel v. Denver & Rio Grande Western R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000). Federal courts have consistently recognized that although a *Daubert* hearing is not required "in ordinary cases where the reliability of an expert's methods is properly taken for granted," such a proceeding is appropriate "in the less usual or more complex cases where

cause for questioning the expert's reliability arises." *Kumho Tire*, 526 U.S. at 152; *see also Group Health Plan, Inc. v. Phillip Morris USA, Inc.*, 344 F.3d 753, 760 (8th Cir. 2003) ("in limine hearings are generally recommended prior to Daubert determinations"). In such instances, failure to create a "sufficiently developed record" may constitute an abuse of discretion. *See Dodge v. Cotter Corp.*, 328 F.3d 1212, 1223 (10th Cir. 2003); *John v. Equine Services, PS*, 233 F.3d 382, 393 (6th Cir. 2000).

II.   **Dr. Brody's testimony is irrelevant and immaterial to Plaintiff's claims because he is unfamiliar with Decedent's condition and with the effects of asbestos on humans**

Dr. Brody's experiments use electron microscopes to show otherwise undetectable sub-cellular changes in laboratory rats after a large dose of asbestos. The testimony is immaterial, irrelevant and is likely to mislead and confuse a jury. The effects of asbestos on the decedent are relevant, as is when a physician diagnosed Mr. Rabe with mesothelioma. The effects of asbestos on rats are irrelevant, as is when a deceased rat begins to show lung damage. In the words of one appellate court:

> Dr. Brody could not give any testimony relating to the Appellants because he did not know who the Appellants were, nor had he reviewed any materials relating in any way to them. All that he knew was that Appellants' counsel informed him that they had been exposed to asbestos.

*Brooks v. Stone Architecture, P.A.*, 934 So.2d 350, 356 (Miss. Ct. App. 2006) (finding that Dr. Brody's deposition testimony was insufficient to create an issue of material fact to defeat summary judgment).

Just like in *Brooks*, Dr. Brody has no familiarity with Mr. Rabe's specific alleged exposures or medical conditions. He therefore has made no effort to

– 6 –

simulate the conditions of Mr. Rabe's alleged exposures in his experiments. He has conducted no experiments on humans. He has conducted no experiments involving realistic exposures to asbestos. Finally, he has conducted no experiments wherein his rats developed mesothelioma.[1]

Dr. Brody's studies cannot logically be extrapolated to the exposures and injuries alleged by Plaintiff. Thus, they have no bearing on any facts of consequence in determination of this action. Dr. Brody cannot aid the jury in accurate deliberations as to plaintiff's claims against Budd and should be excluded as evidence.

### III. **Dr. Brody's testimony is unduly prejudicial, has no probative value, is confusing and cumulative and is an undue waste of time.**

Even relevant evidence may be excluded if its probative value is substantially outweighed by the risk of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. *Id*. All of those factors are implicated by Dr. Brody's typical testimony.

Dr. Brody uses multiple slides and exhibits to dramatize his presentation. Many of the exhibits are electron micrographs showing asbestos in contact with rat cells. The slides are magnified hundreds, if not thousands, of times by the electron microscope and are further enlarged by the projector in court. The sheer size of the projected images creates a

---

[1] None of Dr. Brody's rats have ever spontaneously developed mesothelioma, despite being exposed to quantities of asbestos in excess of 1,000 asbestos fibers per cc, hundreds of times more concentrated than even insulators in the 1940's were exposed to.

prejudicial and misleading impression: that asbestos causes massive damage to lung tissue immediately upon inhalation. This is not only scientifically and legally inaccurate, but has no relevance to this case, as the experiments that produced the slides differ in many drastic respects from the conditions at issue in this trial. Thus, the risk of undue prejudice is extreme, and the presentation is likely to confuse the issues and mislead the jury.

Examination of Dr. Brody typically lasts more than one full day in trial – undoubtedly too much time for presentation of evidence with so little connection to the issues of this case. Furthermore, Dr. Brody's testimony is completely superfluous to Plaintiff's case. Plaintiff's pathologist Dr. Roggli will testify about the pathology of asbestos-related diseases, and is far more qualified to do so than Dr. Brody, who does not have a medical degree and has never conducted experiments on humans

## IV. **The every-exposure opinion is not admissible under F.R.E. 702 and the standards set forth in *Daubert***

Like Plaintiff's medical causation expert Dr. Arthur Frank, Dr. Brody will also opine that each and every asbestos fiber inhaled by Mr. Rabe was capable of causing his disease. Like Dr. Frank, federal and state courts nationwide have excluded these opinions and testimony.

Dr. Brody's single-fiber theory is inconsistent with the most basic tenet of toxicology, which is that "dose makes the poison." *Carroll v. Litton Sys., Inc.*, No. BC-88-253, 1990 WL 312969 at *28 (W.D.N.C. Oct. 29, 1990) aff'd in part, rev'd in part 47 F.3d 1164. Courts have routinely recognized that "all chemicals can cause health problems at some level or concentration of exposure, but they

– 8 –

vary widely in the types of harm caused and in the levels of exposure required to trigger those harms. In addition, all chemicals have thresholds of exposure that must be exceeded before the harms will occur." *Bombardiere v. Schumberger Tech. Corp.*, 934 F. Supp. 2d 843, 849 (N.D. W.Va. 2013); *Henricksen v. ConocoPhillips Co.*, 605 F. Supp. 2d 1142, 1161-62, 1165-66 (E.D. Wash. 2009) (collecting cases rejecting the "no threshold" theory as contrary to the fundamental tenet of toxicology that "the dose makes the poison").

For that reason, causation experts in toxic tort cases must ascertain "the levels of exposure that are hazardous to human beings generally as well as the plaintiff's actual level of exposure" – without such information, expert testimony is neither reliable nor helpful to the jury. *Zellers v. NexTech Northeast, LLC,* 895 F. Supp. 2d 734, 739 (E.D. Va. 2012) (excluding expert testimony as irrelevant, unhelpful, and unreliable because "[w]ithout reliable scientific knowledge of what level of exposure to R-404A is needed to produce [plaintiff's disease], [plaintiff's expert] can only speculate whether the level of [plaintiff's] exposure to R-404A was significant enough to cause her condition."); *see also Parker v. Mobil Oil Corp.*, 16 A.D.3d 648, 651 (NY. App. 2005) (finding that the scientifically-reliable methodology for attributing causation requires experts to ascertain "the level of the toxin which will produce [the plaintiff's] illness (i.e., the dose-response relationship)") (filed at D.E. 296-6); *Mitchell v. Gencorp, Inc.*, 165 F.3d 778, 781 (10th Cir. 1999) (same); *Wright v. Williamette Ind., Inc.*, 91 F.3d 1105, 1107 (8th Cir. 1996) (same).

Unable to offer any evidence as to the dose-response threshold for asbestos, Dr. Brody instead asks the Court to accept the premise that there is no threshold– i.e., that any exposure above background levels is sufficient to cause mesothelioma.[2]  Ex. A at ¶44.  As many courts have found, this "no threshold" theory is really an admission that the experts cannot meet their burden of showing the dose-response level necessary to cause disease. *See, e.g., Smith v. Ford Motor Co.,* No. 2:08-630, 2013 WL 214378, at *2 (D. Utah Jan. 18, 2013) ("When [plaintiff's expert] states that he cannot rule out any asbestos exposure as a possible cause of an individual's mesothelioma he is confirming that there are insufficient facts and data to [support his expert opinion]"); *Butler v. Union Carbide Corp.*, No. 2008CA114, 2011 WL 2347505 at *11 (Ga. App. June 15, 2011) (same); *Free v. Ametek et al.*, No. 07-2-04091-9, Order at 6 (Wash. Super. Ct. March 3, 2008), attached as Exhibit B.

In *Butler v. Union Carbide Corp.*, an asbestos plaintiff sought to introduce expert testimony based on the "no threshold" theory. 2011 WL 2347505 at *9-12. The Butler court aptly found that "[t]he claim that there is no known safe level of exposure does not mean that none exists; it simply means that science today has not or cannot…determine what that level of exposure is." *Id.* at 11-12. In rejecting the expert's proffered testimony, the court explained that:

---

[2]  In an attempt to validate this argument, Dr. Brody relies extensively on findings of regulatory bodies that "there is no safe level of exposure to asbestos." Ex. A at ¶43 (citing the conclusions of the WHO, IARC, NIOSH, EPA, and OSHA.  However, courts have routinely found that the overriding preventative approach and lower causation standard of regulatory bodies renders their conclusions irrelevant and incompetent to support causation opinions in toxic tort cases. *See Mitchell v. Gencorp, Inc.*, 165 F.3d 778, 783 n.3 (10th Cir. 1999) (quoting Allen v. Pa. Eng'g Corp, 102 F.3d 194, 198 (5th Cir. 1996)); The court in *Juni v. A.O. Smith Water Prods.* recently excluded experts who relied upon regulatory bodies to support their "no safe level of exposure to asbestos" theory finding that "the reports and findings of governmental agencies are irrelevant as they constitute insufficient proof of causation." 11 N.Y.S.3d 416, 483, 2015 WL 1840006 at *29 (Ny. April 13, 2015).

– 10 –

> *Daubert* does not permit experts to speculate about what they concede is not known by use of the scientific method. The courtroom is not the place for scientific guesswork, even the inspired sort. Law lags science; it does not lead it.

*Id.* at 12 (emphasis in the original) (quoting *Rosa v. Ciba Geigy Corp.*, 78 F.3d 316, 319 (7th Cir. 1996)). The *Butler* court further held that the "'any exposure' theory is, at most, scientifically-grounded speculation: an untested and potentially untestable hypothesis." *Id.* at 15 (emphasis added); *see also Comardelle,* 76 F. Supp.3d 628, 634 (E.D. La. 2015) ("Although there may be no known safe level of asbestos exposure, this does not support [plaintiff's expert's] leap to the conclusion that therefore every exposure [plaintiff] had to asbestos must have been a substantial contributing cause of his mesothelioma."); *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 278 (5th Cir. 1998) (excluding expert testimony because it "offered no scientific support for his general theory that exposure to toluene solution at any level would cause RADS"); *Anderson v. Ford Motor Co.*, 950 F. Supp.2d 1217, 1224 (D. Utah 2013) (excluding plaintiffs' causation experts because "their testimony is based on their lack of information sufficient to show the level of exposure which does not create a risk of mesothelioma"); *Smith*, 2013 WL 214378 at *2 ("Rule 702 and *Daubert* recognize above all else that to be useful to a jury an expert's opinion must be based on sufficient facts and data. The every exposure theory is based on the opposite: a lack of facts and data.").

Numerous courts have excluded Dr. Brody's causation opinions for these very reasons. S*ee, e.g.*, *Krik v. Exxon Mobil et al.*, 76 F.Supp.3d 747, 755 (N.D. Ill. 2014) (excluding Dr. Brody's "each and every exposure"/"any

– 11 –

exposure"/"single fiber" theory at trial); *Sclafani v. Air & Liquid Sys. Corp.*, 14 F. Supp. 3d 1351, 1356-57 (C.D. Cal. 2014*)* (rejecting Dr. Brody's "every exposure" opinion because, as Dr. Brody conceded, "there was no data to establish that all exposures contribute to mesothelioma"); *Free*, No. 07-2-04091-9, Order at 6 (Wash. Super. Ct. March 3, 2008) (excluding Dr. Brody from testifying about "'every fiber' or every undifferentiated exposure to asbestos"), attached as Exhibit B; *Rockman v. Union Carbide Corp., et al.*¸ 266 F. Supp.3d 839, 843, 849-850 (D. Md. July 17, 2017) (holding that Dr. Brody's theory that "each and every" exposure to asbestos cumulates and therefore is a cause of injury fail to satisfy Rule 702 or the *Daubert* factors, and therefore, is excluded); *Yates v. Ford Motor Co.,* 113 F. Supp.3d 841, 846, 848 (E.D. N.C. 2015) (excluding Dr. Brody's every exposure causation testimony; "[n]umerous courts have excluded expert testimony or evidence grounded in this theory, reasoning that it lacks sufficient support in facts and data");

Accordingly, Dr. Brody's opinions should be excluded because they are not based on sufficient data, and therefore, are unreliable and unhelpful to the jury under Rule 702.

**V.    Dr. Brody's testimony is cumulative**

Dr. Brody's testimony is allegedly offered to assist the jurors in understanding the pathogensis of asbestos-related diseases. However, Plaintiff's pathologist Dr. Victor Roggli invariably testifies at great length on this subject. His direct examination is typically replete with slides showing examples of various asbestos-related conditions and he is cross-examined at length.

– 12 –

The effect of both Dr. Roggli's and Dr. Brody's testimony is cumulative although presented in two guises: one is pathology testimony and the other is microbiology. The bell gets rung twice and cannot be un-rung. The pictures shown by Dr. Brody have a devastating effect upon the jury, creating untoward prejudice, thus making them inadmissible under Federal law.

## **CONCLUSION**

For all these reasons, Budd Company respectfully requests that Dr. Brody's report and general causation opinions are unreliable and unhelpful to the jury and should be excluded from evidence pursuant to Federal Rule of Evidence 702 and *Daubert.* In addition, Dr. Brody's opinions are highly prejudicial and misleading to the jury and should be excluded under Federal Rule of Evidence 403. Should the Court determine that it wishes to receive additional evidence and argument on this matter, Budd Company requests a Daubert hearing to present the Court with the relevant evidence, science, and legal authorities supporting its requested relief.

Respectfully submitted,

RASSMUSSEN, DICKEY & MOORE

Dated:   September 25, 2018         */s/ Vincent E. Gunter*
VINCENT E. GUNTER
1001 E. 101st Terrace, Ste. 300
Kansas City, Miss. 64131
(816) 960-1611
vgunter@rdm.law
*Counsel for The Budd Company*

BUTZEL LONG, P.C.

Dated: September 25, 2018   */s/ Joseph E. Richotte*
JAMES E. WYNNE (P29557)
JOSEPH E. RICHOTTE (P70902)
150 W. Jefferson Ave., Ste. 100
Detroit, Mich. 48226
(313) 225-7000
wynne@butzel.com
richotte@butzel.com

*Counsel for The Budd Company*

– 14 –

## CERTIFICATE OF SERVICE

       I, Vincent E. Gunter, attorney of record for The Budd Company do hereby certify that on September 25, 2018, I electronically filed the foregoing with the Clerk of the Court using the ECF system and that the foregoing has been served upon all known counsel of record to this action via the Court's electronic notification system.

                                               /s/ Vincent E. Gunter  
                                               Vincent E. Gunter