# In the United States District Court
# For the District of Kansas

| | |
|---|---|
| NANCY LITTLE, and<br>ESTATE OF ROBERT L. RABE,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>THE BUDD COMPANY, INC.,<br><br>　　　　　Defendant. | Civil No. 5:16-04170<br>HON. DANIEL D. CRABTREE<br>MAG. KENNETH G. GALE<br><br>**MEMORANDUM SUPPORTING DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF DR. ARTHUR FRANK** |

## NATURE OF MATTER BEFORE THE COURT

Defendant The Budd Company, Inc. respectfully files this memorandum in support of its Motion to Exclude Dr. Arthur Frank's cumulative/each and every exposure theory, and any causation testimony based on the theory,[1] from trial in this lawsuit under: (1) F.R.E. 702, because the opinion is not helpful to a jury, and it does not meet the standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993); and (2) under F.R.E. 403, because it has no probative value and there is a high risk of confusing and misleading the jury.

## STATEMENT OF FACTS

Plaintiff alleges that Decedent, Robert Rabe, died of mesothelioma as a result of exposure to asbestos while he was employed at ATSF from 1951 to 1979. Plaintiff claims that among Decedent's duties was the removal of asbestos insulation installed on Budd railway passenger cars. In her attempt to

---

[1] The every-exposure opinion refers to the opinion that each and every exposure to asbestos sustained by an individual contributes to cause a later case of mesothelioma, lung cancer, or asbestosis. The opinion that each and every exposure to asbestos contributes to cause a later-diagnosed disease is often expressed as "each and every breath of asbestos-containing air contributes," "each and every inhaled asbestos fiber contributes," there is "no safe level" of asbestos exposure, "each and every exposure above background contributes," "each significant, special, or occupational exposure contributes," and "the cumulative dose caused the disease." The U.S. District Court in Maryland addressed Dr. Frank's rephrasing of the every-exposure opinion:

> Dr. Frank has previously stated that he specifically avoids using the phrase "each and every" in light of court rulings excluding testimony based on that theory. . . . The United States District Court for the Western District of Wisconsin has recently rejected Dr. Frank's rephrasing in *Suoja v. Owens-Illinois, Inc.*, 211 F. Supp. 3d 1196, 1207 (W.D. Wis. 2016), holding that, whether called cumulative exposure or each and every exposure," Dr. Frank's "ultimate opinion was not tied to any specific quantum of exposure that was attributable to defendant, but instead was based on his holistic view that every exposure to asbestos, not matter how minimal, is a substantial contributing factor to any resulting mesothelioma."

*Rockman v. Union Carbide Corp., et al.,* 266 F. Supp.3d 839, 849 (D. Md. 2017). Though the wording varies, the meaning does not. These opinions are, in reality, only one opinion, and should be excluded here.

prove that any exposures from Mr. Rabe's alleged work on Budd passenger railway cars were a substantial contributing factor in causing Mr. Rabe's disease, Plaintiff proffered the expert testimony of Dr. Arthur Frank, a frequent player in asbestos litigation for plaintiffs' attorneys. The basis for Dr. Frank's opinions is stated in his report (Exhibit A) and an affidavit that is not case-specific (Exhibit B).

Budd requests that the Court exclude the expert reports and any expert testimony of Dr. Arthur Frank, and in particular, any testimony stating or suggesting that any alleged exposure to asbestos related to any Budd passenger cars was a substantial factor in causing Mr. Rabe's mesothelioma.

Dr. Frank believes that a single, solitary asbestos fiber has the potential to cause asbestos-related cancer. (See Exhibits "A" & "B".) Budd challenges Dr. Frank's opinions because Plaintiff cannot meet her burden of establishing that they are scientifically reliable under Federal Rule of Evidence 702 and the standards set forth in *Daubert*. Neither of his reports put forth the level of exposure, if any, from any railway car made by Budd or the relative contribution of such an exposure to Mr. Rabe's overall exposure, nor does he state what level he considers to be a substantial exposure. Instead, he relies upon the much-discredited "every exposure" or "cumulative exposure" theory. This theory avoids the question as to whether an exposure from a particular company's product was substantial and instead employs an irrelevant truism and addresses a different issue ("every exposure" contributes to the "cumulative exposure" which in turn all contribute to the risk of disease). The proponents then color the issue with policy presumptions from agencies such as OSHA, EPA and NIOSH that for carcinogens there can be no proven safe level of

– 3 –

exposure to suggest that all exposures caused the disease. Such a theory mandates that all exposures other than zero are "substantial", puts the burden of disproving causation on the defendant, conflates risk and cause, and employs circular reasoning (presumes sufficiency of exposure by virtue of the presence of the disease).

## QUESTION PRESENTED

Should the Court exclude the testimony of Plaintiff's expert witness Arthur Frank, M.D.?

## ARGUMENT AND AUTHORITIES

### I.   The Court Must Determine Whether an Expert's Methodology Meets FRE 702.

Under Federal Rule of Evidence 702, expert opinion evidence is admissible only if (a) the expert's scientific, technical, and other specialized knowledge will assist the trier of fact in understanding the evidence or to determine a fact in issue, (b) the expert witness is qualified as an expert by knowledge, skill, experience, training or education to provide the opinion, and (c) the following three requirements are met:

> (1) The testimony is based upon sufficient facts or data;
>
> (2) The testimony is the product of reliable principles and methods; and
>
> (3) The expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Because expert testimony is almost invariably cloaked with an aura of reliability, Rule 702 requires the Court to perform a gatekeeper's function of screening such evidence for both reliability and relevance.  *See*

*Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-95 (1993). To fulfill its gatekeeping role, the Court must conduct a two-part inquiry. The Court must determine if (1) the expert's proffered testimony "has 'a reliable basis in the knowledge and experience of his [or her] discipline' and (2) whether the proposed testimony is sufficiently 'relevant to the task at hand' and that the expert's opinion is material and will assist the trier of fact." *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232-33, 1234 (10th Cir. 2004).

Indeed, "[u]nder the regime of *Daubert* a . . . judge asked to admit scientific evidence must determine whether the evidence is genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist." *Allison v. McGhan Med Corp.,* 184 F.3d 1300, 1316-17 (11th Cir. 1999). In considering the admissibility of expert testimony under Rule 702, "the court must recognize that due to the difficulty of evaluating their testimony, expert witnesses have the potential to 'be both powerful and quite misleading.'" *Daubert*, 509 U.S. at 595. Thus, "given the potential persuasiveness of expert testimony, proffered evidence that has a greater potential to mislead than to enlighten should be excluded." *Id.*

In assessing whether the proffering party has made the necessary showing of scientific reliability, a trial court should consider the following non-exclusive factors set forth in *Daubert:*

>    (1) Whether the theory or technique can be tested;
>    (2) Whether it has been subjected to peer review and publication; and

– 5 –

> (3) The known or potential rate of error for the theory or technique, and
>
> (4) The general degree of acceptance in the relevant scientific or professional community.

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). The proponent of expert testimony bears the burden of proving the testimony's reliability under this standard by a preponderance of the evidence. *See Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001).

While the district court has discretion in determining how to fulfill this obligation, the most common method for developing a fully developed record is through a *Daubert* hearing. *See Goebel v. Denver & Rio Grande Western R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000). Federal courts have consistently recognized that although a *Daubert* hearing is not required "in ordinary cases where the reliability of an expert's methods is properly taken for granted," such a proceeding is appropriate "in the less usual or more complex cases where cause for questioning the expert's reliability arises." *Kumho Tire*, 526 U.S. at 152; *see also Group Health Plan, Inc. v. Phillip Morris USA, Inc.*, 344 F.3d 753, 760 (8th Cir. 2003) ("in limine hearings are generally recommended prior to *Daubert* determinations"). In such instances, failure to create a "sufficiently developed record" may constitute an abuse of discretion. *See Dodge v. Cotter Corp.*, 328 F.3d 1212, 1223 (10th Cir. 2003); *John v. Equine Services, PS*, 233 F.3d 382, 393 (6th Cir. 2000).

## II.  **The every-exposure opinion is not admissible under F.R.E. 702 and the standards set forth in *Daubert***

*Daubert* holds that Rule 702 requires the testimony "assist the trier of fact to understand the evidence or to determine a fact at issue." 509 U.S. at 591. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id.* (quoting 3 Weinstein & Berger ¶ 702[02], p. 702–18). The Court characterized this question as one of "fit." *Id.*

Dr. Frank will opine that any asbestos fibers inhaled by Mr. Rabe were capable of causing his disease because, he alleges, there is no threshold of exposure below which there is no risk. He mistakenly concludes that because he cannot rule any particular exposure out, he can rule them all in. In *Smith v. Ford Motor Co.*, No. 8-cv-630, 2013 WL 214378, (D. Utah. Jan. 18, 2013), the court likened the every-exposure opinion to a similarly hasty conclusion in a hypothetical unsolved murder:

> It is somewhat like a homicide detective who discovers a murdered man from a large family. Based on his and other detectives' training and experience the detective knows that family members are often the killer in such cases. When asked if there are any suspects the detective says he cannot rule out any of the murdered man's relatives. This would be reasonable, but it would not allow the detective to attribute legal liability to every family member on the basis of such a theory.

*Smith*, 2013 WL 214378 at *3. In this lawsuit, the jury will be tasked with determining legal liability, but the every-exposure opinion is not helpful to a jury in performing that task. Thus, the opinion is inadmissible under the standards of F.R.E. 702. *See id.* at *4 (stating that the every-exposure opinion fails "with

– 7 –

regard to the most basic purpose of Rule 702—that the expert's opinion should be helpful to the jury").[2]

In *Daubert*, the Court held that a "trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* For an expert opinion to be reliable, the opinion must be "based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation.'" *In re Paoli Railroad Yard Litigation*, 35 F.3d. 717, 742 (3d Cir. 1994) (quoting *Daubert*, 509 U.S. at 589). The proposed testimony must be based on "good grounds and appropriate validation must support it." *Daubert,* 509 U.S. at 590. Importantly, the court must evaluate the testimony with the understanding that "[t]he burden for establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion. . . ." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). Plaintiffs cannot meet this burden.

The *Smith* Court again provides guidance. Strikingly similar to Dr. Frank's opinions here, the expert witness in *Smith* opined that plaintiff's mesothelioma "was caused by his total and cumulative exposure to asbestos, with all exposures and all products playing a contributing factor." *Smith*, 2013 WL 214378 at *3. This opinion is identical to the opinion plaintiffs' experts offer in this matter. *See* Ex. A at 1.  As the *Smith* Court found, the opinion is based on a complete "lack of facts and data," and is supported by no scientific methodology. *Id.* at *2. Ultimately, the *Smith* Court held that to offer a

---

[2] The every-exposure opinion has even been rejected by the Supreme Court of Pennsylvania under the less-restrictive *Frye* test. *See Betz v. Pneumo Abex LLC*, 44 A.3d 27 (Pa. 2012). There is no reason this opinion should be accepted under *Daubert*.

methodologically sound opinion on causation, an expert witness must show that the alleged exposure to the specific defendant's product "constitutes sufficient exposure to cause [the plaintiff's] cancer on its own . . . or that such exposure amounted to more than an insignificant or *de minimus* factor in the development of the plaintiff's disease." *Id.* at *3. Just like in *Smith*, here, plaintiff's experts offer no such analysis. Her proposed every-exposure opinions are inadmissible under *Daubert*. *Id.*; *see also Anderson v. Ford Motor Co.*, No. 06-cv-741, 2013 WL 3179497 (D. Utah 2013) (holding that the "every exposure theory of causation does not meet the standards set by F.R.E. 702 and *Daubert* and must be excluded"); *Sclafini v. Air and Liquid Systems, Corp.*, et al., No. 2:12-cv-3013-SVW, 2013 WL 2477077, at *4-5 (C.D. Cal. May 9, 2013) (excluding the every-exposure opinion as unreliable under *Daubert*).

It is well established that to recover in a toxic tort case, the plaintiff must prove the minimum dose necessary to cause the injury alleged, as well as the plaintiff's actual level of exposure to the toxic substance. *See McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1241 (11th Cir. 2005) (citing *Mitchell v. Gencorp*, 165 F.3d 778, 781 (10th Cir. 1999)). Thus, when analyzing an expert's methodology in asbestos cases, "the court should pay careful attention to the expert's testimony about the dose-response relationship." *See id*. The dose-response relationship provides invaluable information regarding the minimum degree of exposure necessary to cause the alleged injury. *Id.* Indeed, "[t]he expert who avoids or neglects this principle . . . casts suspicion on the reliability of his methodology." *Id.* The every-exposure opinion ignores the dose-response relationship. "Simply put, one cannot simultaneously maintain that a single fiber

– 9 –

among millions is substantially causative, while also conceding that a disease is dose responsive." *Betz v. Pneumo Abex, LLC*, 44 A.3d 27, 56 (Pa. 2012); As the *Smith* Court recognized, "[n]umerous courts have examined and rejected expert testimony attempting to assert causation without assessing the dose and held the every exposure theory lacking under *Daubert* and Rule 702."4 2013 WL 2144378 at *5 (citing, e.g., *Moeller v. Garlock Sealing Technologies*, LLC, 660 F.3d 950, 952 (6th Cir. 2011); *Borg-Warner Corp. v. Stephens*, 239 S.W.3d 304, 321 (Tex. App. Ct. 2010) (further citations omitted)).³

With increasing frequency, courts across the country have refused to admit testimony on the "each and every" exposure theory.  *See, e.g., McClain*, 401 F.3d at 1240; *Lindstrom v. A–C Prod. Liab. Trust*, 424 F.3d 488 (6th Cir. 2005), *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 40, 53 (2d Cir.2004); *Comardelle v. Pa. Gen. Ins. Co.*, 2015 WL 64279, at *4-5 (E.D. La. Jan. 5, 2015); *Sclafani v. Air & Liquid Sys. Corp.*, 14 F. Supp. 3d 1351, 1356-57 (C.D. Cal. 2014*) (*rejecting Dr. Arnold Brody's opinion testimony on numerous grounds, including on the basis that to accept the "each and every" fiber theory would necessarily negate the "substantial factor" prong of the causation

---

[3] Courts have repeatedly taken a highly skeptical view of the science underlying the every-exposure opinion. *See, e.g., Georgia-Pacific Corp. v. Stephens*, 239 S.W.3d 304, 320–21 (Tex. App. 2007) ("The [plaintiffs'] experts failed to show, however, that the 'any exposure' theory is generally accepted in the scientific community—that any exposure to a product that contains asbestos results in a statistically significant increase in the risk of developing [cancer].") (emphasis in original); *In re W.R. Grace & Co.*, 355 B.R. 462, 476 (Bankr. D. Del. 2006) ("The use of the no safe level or linear 'no threshold' model for showing unreasonable risk 'flies in the face of the toxicological law of dose-response, that is, that 'the dose makes the poison. . . .'"); *Bartel v. John Crane, Inc.,* 316 F. Supp. 2d 603, 611 (N.D. Ohio 2004) ("[T]he opinion of Dr. Frank, that every breath [plaintiff] took which contained asbestos could have been a substantial factor in causing his disease, is not supported by the medical literature."); *Gregg v. V-J Auto Parts, Co*., 943 A.2d 216, 227 (Pa. 2007) (labeling the every-exposure opinion a "fiction" and holding that it cannot properly "support the conclusion that the product sold by the defendant was a substantial factor in causing the harm.").

analysis); *Krik v. Crane Co.*, 2014 WL 7330901, at *2-7 (N.D. Ill. Dec. 22, 2014) aff'd 870 F.3d 669 (7th Cir. 2017); *Anderson v. Ford Motor Co.*, 950 F. Supp. 2d 1217, 1223-25 (D. Utah. 2013); *Smith v. Ford Motor Co.*, 2013 WL 214378 (D. Utah Jan. 18, 2013); *Betz*, 44 A.3d at 58; *Wannall v. Honeywell Int'l, Inc*., No. 10-351 (BAH), 2013 WL 1966060 (D.D.C. May 14, 2013); *Bartel v. John Crane*, Inc., 316 F.Supp.2d 603, 611 (N.D. Ohio 2004) ("[T]he opinion of Dr. Frank, that every breath [plaintiff] took which contained asbestos could have been a substantial factor in causing his disease, is not supported by the medical literature*.")*; *Gregg v. V-J Auto Parts, Co.*, 943 A.2d 216, 227 (Pa. 2007) (labeling the every-exposure opinion a "fiction" and holding that it cannot properly "support the conclusion that the product sold by the defendant was a substantial factor in causing the harm."); *Butler v. Union Carbide Corp.*, 712 S.E.2d 537 (Ga. App. 2011); *Smith v. Kelly–Moore Paint Co., Inc.*, 307 S.W.3d 829, 839 (Tex. App. 2010); *Georgia–Pac. Corp. v. Stephens*, 239 S.W.3d 304, 321 (Tex. App. 2007); *Borg–Warner Corp. v. Flores*, 232 S.W.3d 765, 774 (Tex.2007); *In re Toxic Substances Cases, A.D*. 03–319, 2006 WL 2404008 (Pa. Ct. Com. Pl. Aug. 17, 2006);

Numerous federal and state courts have rejected Dr. Frank's dubious methodology. In *Krik v. Exxon Mobile Corp.,* the Seventh Circuit affirmed the district court's finding that the plaintiff had not established that their "any exposure" and the "cumulative exposure" theories were sufficiently reliable to warrant admission under Rule 702 and *Daubert*. 870 F.3d 669, 677-78 (7th Cir. 2017). Dr. Frank had attempted to offer testimony concerning a "cumulative exposure" theory, as opposed to an "any exposure" theory. *Id.* at 674-75.

Noting that the "cumulative exposure" theory was no different from the "each and every exposure" theory, the court concluded that the "any exposure" theory ignored fundamental principles of toxicology that illnesses like cancer are dose dependent.  *Id.* at p. 675-78. The Seventh Circuit noted several flaws with Dr. Frank's methodology, including that he "had not presented any individualized analysis of the levels of asbestos exposure, had provided only generalized citations to scientific literature with no indication that they were authorities upon which [he] would rely, did not identify any peer-reviewed scientific journal adopting this theory, did not cite any medical studies or discuss an error rate." *Id.* at p. 675.  The Court stated that "requiring a defendant to exclude a potential cause of the illness, therefore, improperly shifts the burden to the defendants to disprove causation and nullifies the requirements of the "substantial factor" test. *Id.* at p. 677-78.  Like the Seventh Circuit Court of Appeals, the Sixth and Ninth Circuits have likewise excluded these cumulative and/or "each and every exposure" theories for similar reasons.  *Id.*

Similarly, the United States District Court for the District of Maryland in the case of *Rockman v. Union Carbide Corp., et al.,* 266 F. Supp.3d 839 (D. Md. 2017) specifically excluded Dr. Frank' testimony as to the "cumulative exposure" theory. In doing so, the court correctly observed that "prevailing authority applying *Daubert* has rejected both Dr. [Arnold] Brody and Dr. Frank's "each and every exposure" causation theory. That theory is not the product of reliable principles and methods," as required by Rule 702(c) of the Federal Rules of Evidence, nor does it enjoy "general acceptance" within the "relevant

– 12 –

scientific community . . . ." *Rockman,* 266 F. Supp.3d at 850, quoting *Bresler v. Wilmington Trust Co.,* 855 F.3d 178, 195 (4th Cir. 2017).

As detailed by the courts noted above, the "each and every" exposure opinion suffers from two fundamental problems when viewed from a scientific perspective:  First, it is a hypothesis, not a result, and so it cannot even be said that any "method" or systematic inquiry underlies it.  Because there is no methodology, there can be no "general acceptance" of the methodology as required by *Daubert*.  Second, it is not a logical hypothesis.  For each of these reasons, the application of the opinion to any case is a novel method.  The theory remains one that is not generally accepted in the scientific community and should be rejected by this Court.

### III. The every-exposure opinion should be excluded under F.R.E. 403 because it has no probative value, and it would serve only to confuse and mislead the jury regarding causation standards.

Even if Plaintiff's proposed "each and every exposure" opinion was relevant and scientifically valid — Plaintiff has demonstrated neither — the opinion should be excluded under Federal Rule of Evidence 403 because its probative value, if any, is far outweighed by the danger of unfair prejudice, confusion of the issues, and it will mislead the jury regarding the proper legal standards of causation. Kansas law is clear that, to demonstrate causation, plaintiff must set forth evidence that a defendant's products were a substantial factor in causing the injured party's injuries. *See Roberson v. Counselman*, 686 P.2d 149, 154, 235 Kan. 1006, 1009-1010 (Kan. 1984). Plaintiff seeks to introduce this opinion to demonstrate that any exposure to an asbestos-containing product, regardless of how slight, is enough to show causation. But

Plaintiff's proposed use of this opinion would impermissibly render the substantial factor test "meaningless." *See Lindstrom*, 424 F.3d at 493 (rejecting the opinion "that every exposure to asbestos, however slight, was a substantial factor in causing . . . disease").

The introduction of this opinion serves no useful purpose as the jury cannot rely on the opinion to circumvent the causation standards under Kansas law. Furthermore, Plaintiff's proposed use of this opinion will cause confusion of the issues with regard to the proper standard of causation and it will serve to prejudice Budd. "Unfair prejudice," within the context of Rule 403, means an undue tendency to suggest a decision on an "improper basis." *See Old Chief v. United States,* 519 U.S. 172, 180 (1997) (quoting Committee Notes to Rule 403). In other words, even if the jury were to consider the proposition that "each and every exposure" to asbestos is a "significant and causative factor in the cancer," that opinion will serve no purpose because the legal standards still require Plaintiff to demonstrate that Mr. Rabe worked on Budd's passenger cars with the frequency, regularity and proximity required to demonstrate that the product was a substantial factor in causing the injury. The introduction of this opinion, however, could lead to a decision on an improper basis because the "each and every exposure" opinion is fundamentally inconsistent with the applicable legal standards here. Therefore, the opinion should be excluded under Rule 403.

## **CONCLUSION**

For all these reasons, Budd Company, Inc. respectfully requests the Court to exclude the cumulative/each and every exposure theory and any

– 14 –

causation testimony based on the theory, including the causation testimony of Dr. Arthur Frank.  Should the Court determine that it wishes to receive additional evidence and argument on this matter, Budd Company requests a Daubert hearing to present the Court with the relevant evidence, science, and legal authorities supporting its requested relief.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | RASSMUSSEN, DICKEY & MOORE |
| Dated:   September 25, 2018 | */s/ Vincent E. Gunter*<br>VINCENT E. GUNTER<br>1001 E. 101st Terrace, Ste. 300<br>Kansas City, Miss. 64131<br>(816) 960-1611<br>vgunter@rdm.law<br>*Counsel for The Budd Company* |
|  | BUTZEL LONG, P.C. |
| Dated:   September 25, 2018 | */s/ Joseph E. Richotte*<br>JAMES E. WYNNE (P29557)<br>JOSEPH E. RICHOTTE (P70902)<br>150 W. Jefferson Ave., Ste. 100<br>Detroit, Mich. 48226<br>(313) 225-7000<br>wynne@butzel.com<br>richotte@butzel.com<br>*Counsel for The Budd Company* |

**CERTIFICATE OF SERVICE**

I, Vincent E. Gunter, attorney of record for The Budd Company do hereby certify that on September 25, 2018, I electronically filed the foregoing with the Clerk of the Court using the ECF system and that the foregoing has been served upon all known counsel of record to this action via the Court's electronic notification system.

/s/ Vincent E. Gunter  
Vincent E. Gunter